**UNITED STATES of America,
Plaintiff,**

**v.**

**Albert Lamont HECTOR Defendant.**

**No. CR 04–00860 DDP.**

United States District Court,
C.D. California.

March 23, 2005.

Mark Aveis, Rosalind Wang, Office of US Attorney, Los Angeles, CA, for Plaintiff.

Davina Chen, Federal Public Defender, Los Angeles, CA, for Defendant.

## ORDER GRANTING MOTION TO SUPPRESS EVIDENCE

PREGERSON, District Judge.

This matter is before the Court on the defendant's second motion for reconsideration of order denying motion to suppress evidence. After reviewing the papers submitted by the parties and hearing oral argument, the Court grants the defendant's motion and orders the contested evidence suppressed.

### I. Background

On July 9, 2004, Albert Lamont Hector ("the defendant") was charged in an indictment for possession with intent to distribute cocaine base (21 U.S.C. § 846), possession of a firearm in furtherance of drug trafficking (18 U.S.C. § 924(c)), and being a felon in possession of a firearm and ammunition (18 U.S.C. § 922(g)(1)).

On September 27, 2004, the defendant filed a motion to suppress the evidence obtained on June 2, 2004, when agents from the Bureau of Alcohol, Tobacco and Firearms ("ATF") and officers from the Los Angeles Police Department ("LAPD") arrested the defendant and searched his apartment. During the search, the defendant was presented with a "Search Warrant Notice of Service" ("Notice of Service"). The Notice of Service did not indicate which items the officers and agents were authorized to seize, or state the address of the premises to be searched.[1] The government acknowledged during oral argument that the "Notice of Service" is not a warrant. After the defendant was booked, he apparently received a property receipt indicating what items the officers had seized. The government conceded during oral argument that at no time before, during, or immediately after the search, did it serve a search warrant on the defendant. It appears that the defendant was first provided with the search warrant as part of the government's discovery obligations.

In his motion to suppress evidence, the defendant argued that the Notice of Service was inadequate under Federal Rule of Criminal Procedure 41(f) ("Rule 41") and the Fourth Amendment. The argument regarding Rule 41 was premised on the contention that the investigation had been

---

1. The Notice of Service stated:

 To whom it may concern:
 1. These premises have been searched by the peace officers of the Los Angeles Police Department pursuant to a search warrant issued on 5/28/04 by the Honorable Judge Jacob Adajian, Judge of the Superior Court, Los Angeles Judicial District.

 2. The search was conducted on 6/2/04. A list of the property seized pursuant to the search warrant is provided on the attached Los Angeles Police Department receipt for property taken into custody.
 3. If you wish further information, you may contact: Officer Fletcher at 213–473–4804.

"federal in character." On October 18, 2004, after determining that the investigation had not been federal in character and that Rule 41 did not apply, the Court denied the defendant's motion to suppress. The Court granted the defendant leave to submit supplemental briefing, which was filed with the Court on October 22, 2004.

On November 1, 2004, the defendant filed a motion for reconsideration of order denying motion to suppress evidence. The Court denied this motion on December 1, 2004.

On December 21, 2004, a jury convicted the defendant on all three counts of the indictment.

On December 27, 2004, the defendant filed his second motion for reconsideration of order denying motion to suppress evidence, which is now before the Court. The argument contained in the defendant's reply brief relies on a recent Ninth Circuit case, *United States v. Martinez–Garcia,* 397 F.3d 1205 (9th Cir.2005), which postdates the defendant's convictions.

## II. Discussion

### A. *Fourth Amendment Warrant Requirements*

The Fourth Amendment of the United States Constitution states, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched."

The requirement that "a search warrant must be sufficiently particular and not overbroad" is commonly referred to as the Fourth Amendment's "particularity requirement." *See United States v. McGrew,* 122 F.3d 847, 849 (9th Cir.1997) (citations omitted). The purpose of the particularity requirement is to protect peo-

ple from "unbounded, general searches." *Id.* (citing *United States v. Hillyard,* 677 F.2d 1336, 1339 (9th Cir.1982)). Therefore, "a warrant 'must be specific enough to enable the person conducting the search reasonably to identify the things authorized to be seized.'" *Id.* (quoting *United States v. Spilotro,* 800 F.2d 959, 963 (9th Cir.1986)). Additionally, "[a] particular warrant also 'assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search.'" *Groh v. Ramirez,* 540 U.S. 551, 561, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004) (quoting *United States v. Chadwick,* 433 U.S. 1, 9, 97 S.Ct. 2476, 53 L.Ed.2d 538, (1977) (citing *Camara v. Municipal Court of City and County of San Francisco,* 387 U.S. 523, 532, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967)), abrogated on other grounds, *California v. Acevedo,* 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991)). The concern for alerting the person whose property is being searched is referred to as the "notice requirement." *See Martinez–Garcia,* 397 F.3d at 1211.

In *McGrew,* the Ninth Circuit confronted the issue whether the particularity requirement was satisfied by a warrant's reference to an affidavit that was not served on the defendant. 122 F.3d at 848. The magistrate judge had issued a search warrant based on an affidavit by an agent of the federal Drug Enforcement Agency ("DEA"). *Id.* The warrant itself did not specify the type of criminal activity suspected or the evidence that was sought. *Id.* Rather, "[i]n the space provided for that information, the warrant referred the reader to the 'attached affidavit which is incorporated herein.'" *Id.* When the search was performed, the affidavit was not presented to the defendant. *Id.* at 849. The court stated, "The purpose of the accompanying affidavit clarifying a warrant is both to limit the officer's discre-

tion and to inform the person subject to the search what items the officers executing the warrant can seize." *McGrew*, 122 F.3d at 850 (emphasis omitted) (quoting *United States v. Hayes*, 794 F.2d 1348, 1355 (9th Cir.1986)). Because the purposes of the particularity requirement could not be secured by an affidavit that was never served on the defendant, the Ninth Circuit determined that the search warrant lacked sufficient particularity and was invalid. *Id.* at 850.

In his September 27, 2004 motion to suppress evidence, the defendant argued that because the law enforcement officers did not serve him with the search warrant, the June 2, 2004 search was unreasonable under *McGrew*. Because a warrant is invalid if it is insufficiently particular (and a search based on an invalid warrant unlawful), he argued, it follows that where *no warrant* has been served, the search must also be unconstitutional. This argument was grounded in the notice requirement; specifically, that where no warrant has been served, the person whose premises are being searched has no notice of the warrant's scope or the executing officer's authority.

Following *McGrew*, however, uncertainties remained regarding the protections secured by the Fourth Amendment. *See Martinez–Garcia*, 397 F.3d at 1211 ("The notice requirement is not absolute and has not been fully defined by the United States Supreme Court."). For example, in *Groh v. Ramirez*, the Supreme Court stated:

It is true ... that neither the Fourth Amendment nor Rule 41 ... requires the executing officer to serve the warrant on the owner before commencing

the search .... Quite obviously, in some circumstances-a surreptitious search by means of a wiretap, for example, or the search of empty or abandoned premises-it will be *impracticable or imprudent* for the officers to show the warrant in advance. Whether it would be unreasonable to refuse a request to furnish the warrant at the outset of the search when, as in this case, an occupant of the premises is present and poses no threat to the officers' safe and effective performance of their mission, is a question that this case does not present.

540 U.S. at 562 n. 5, 124 S.Ct. 1284 (citations omitted) (emphasis added).[2]

In addition, some uncertainty existed as to whether the notice requirement imposed burdens on state officers executing state warrants. *See United States v. Silva*, 247 F.3d 1051, 1058 (9th Cir.2001). In *Silva*, state authorities discovered evidence that led to the conviction of several defendants for conspiracy to manufacture and distribute methamphetamine. One defendant, whose private residence was searched, argued that the evidence seized from his home should be suppressed because the authorities had failed to serve the search warrant on the defendant's wife, who was present at the search. The court determined that the defendant lacked standing to challenge the warrant's execution because he was incarcerated at the time of the search. *Id.* at 1058.

Although the dispositive legal issue in *Silva* related to standing, the court addressed in dicta two issues affecting the notice requirement. First, the court suggested that there was an unsettled legal

**2.** In *Groh* a search warrant that did not describe the persons or things to be seized, and was thus plainly invalid, was served on the person searched. The application for the warrant, however, did describe these things with sufficient particularity. Therefore, the issue was whether the application, which was not attached to the warrant or referred to by the warrant, could cure the defect. The Supreme Court held that the application did not render the warrant valid.

issue as to whether the Fourth Amendment's notice requirement applied to state warrants executed by state officers. *Id.* ("Whatever the potential application of *McGrew* to a state warrant, Defendant ... lacks standing to assert the claim."). Second, the court interpreted *McGrew* as involving Rule 41, not the Fourth Amendment. *Id.* at 849 n. 4 ("*McGrew* involved a federal warrant, so the agents were required by Federal Rule of Criminal Procedure 41(d) to 'give to the person from whom or from whose premises the property was taken a copy of the warrant.' "). Accordingly, it was unclear if the protections articulated in *McGrew* were grounded in the Fourth Amendment or Rule 41; the distinction was important because Rule 41 applies only to warrants that are federal in character.

In *United States v. Grubbs*, the Ninth Circuit addressed whether a facially defective anticipatory search warrant could be cured by an affidavit when the affidavit was not presented to the person whose property was being searched. 377 F.3d 1072 (9th Cir.2004). The Ninth Circuit affirmed its holding in *McGrew*, and determined that an affidavit can only cure a defective search warrant if the affidavit is presented to the person whose property is being searched. The court stated:

> If the officers conducting the search were not required to present the affidavit to the residents of the house being searched, law enforcement personnel would be free to search as they like, and homeowners and others would have no effective way to ensure that the search of their premises conformed to the lawful constraints approved by an impartial magistrate.

*Id.* at 1077. *Grubbs* affirmed the purpose of the notice requirement and further confirmed that the protections were based on the Fourth Amendment, not Rule 41. *Id.* at 1073 ("We ... hold that the search of

Grubbs' premises violated the Fourth Amendment."). However, because the *Grubbs* search was orchestrated by United States Postal Inspectors, the case did not address whether the notice requirement is applicable to state officers executing state warrants.

To the extent that there was any uncertainty regarding the applicability of the Fourth Amendment's notice requirement to warrants obtained and executed by state law enforcement officers, the issue was resolved by the Ninth Circuit in *Martinez–Garcia*. In that case, a state court judge issued a search warrant based on the affidavit of a state police officer. When the search was executed, an officer advised the defendant that he had a search warrant and showed him some "paperwork." *Id.* at 1210. The defendant responded that he did not speak English. The police officer then called a Bureau of Immigration and Customs Enforcement ("BICE") agent and requested that he come to the residence and serve as a translator. *Id.* State officers began to search the house and soon found a firearm. *Id.* Approximately forty minutes to one hour after the search began, the BICE agent arrived. *Id.* He read the warrant to the defendant in Spanish and asked him if the residence contained any firearms. *Id.* The defendant replied that there was a firearm in the residence. *Id.* The BICE agent relayed this information to the state officers, who responded that they had already located the weapon. *Id.*

The defendant subsequently challenged the search in a motion to suppress. After his motion was denied, he entered a conditional plea of guilty to one count of possessing a firearm as an illegal alien in violation of 18 U.S.C. § 922(g)(5).

On appeal, the defendant argued that the firearm should have been suppressed pursuant to the Fourth Amendment and

Rule 41 because the officers had failed to serve the warrant before conducting the search. The Ninth Circuit analyzed the warrant issues separately under the Fourth Amendment and Rule 41. The court framed the Fourth Amendment analysis by stating that "[i]n determining the contours of a reasonable search, courts have balanced the need to give notice to occupants with a sometimes competing need for flexibility that allows police to do their job effectively." *Id.* at 1211. The court stated that to assess the reasonableness of the execution of a search made pursuant to a warrant, a court must consider (1) "factors that bear on protecting the privacy due to the public"; (2) the reasonable expectations of an informed public; (3)the needs of law enforcement officers; and (4) "any other matters appropriately considered as part of the totality of the circumstances."[3] *Id.* (citations and quotation marks omitted). In balancing these factors, the court determined that the officers in *Martinez–Garcia* did not act unreasonably in delaying the service of the warrant for a reasonably brief time, because they served the warrant as soon as it was practicable to do so, i.e. when the translator arrived. *Id.* at 1212. The court noted, however, that "it may be presumptively unreasonable if officers fail entirely to serve a sufficient warrant at any time before, during or immediately after a search of a home." *Id.* at 1212 n. 3 (citing *Grubbs,* 377 F.3d at 1079 & n. 9; *McGrew,* 122 F.3d at 849–50).

■ Based on *Martinez–Garcia,* the Court finds that it is required to examine the totality of the circumstances to determine whether a search executed pursuant to a warrant is reasonable. *Id.* at 1211. Where no law enforcement needs or other relevant considerations outweigh the concerns represented by the notice requirement, the Court finds that the failure of law enforcement personnel to serve a sufficiently particular warrant on a defendant before, during, or immediately after a search pursuant to a warrant is presumptively unreasonable. *See id.* at 1211–212.

■ Further, the Court finds that the protections of the Fourth Amendment apply to state warrants served by state officers. In *Martinez–Garcia,* the search warrant was obtained from a state court and executed by state officers. Although a federal agent from BICE participated in briefings with state officers before the search "in part because he believed he would have the opportunity to arrest Mexican nationals for immigration violations," the court did not find that this issue was relevant to the Fourth Amendment analysis. *Id.* at 1210. In contrast, when the court analyzed the Rule 41 warrant issues, it addressed (but did not resolve) whether the investigation was federal in character. By comparing the analysis under the Fourth Amendment with the analysis under Rule 41, it is clear that the Ninth Circuit does not distinguish between state and federal investigations when analyzing the protections of the Fourth Amendment's notice requirement. This conclusion is in accord with settled case law indicating that the Fourth Amendment applies to the states through its incorporation into the Fourteenth Amendment. *See, e.g., Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *Elkins*

---

**3.** In addition, the Ninth Circuit clarified the Supreme Court's language in *Groh,* stating, "Most recently in *Groh,* the Court stated that 'neither the Fourth Amendment nor Rule 41 ... requires the executing officer to serve the warrant on the owner before commencing the search' *under all circumstances.*" *Mar-* *tinez–Garcia,* 397 F.3d at 1211 (emphasis added). The addition of the phrase "under all circumstances" reflects the Ninth Circuit's conclusion that, in any given situation, the protections offered by the Fourth Amendment's notice requirement depend upon the particular circumstances of the search.

*v. United States,* 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960).

### B. *Application to the Case at Hand*

■ As stated above, when evaluating the reasonableness of the execution of a search warrant, courts must examine the totality of the circumstances, taking into account (1) the privacy due to the public; (2) the reasonable expectations of an informed public; (3) the needs of law enforcement officers; and (4) any other appropriate considerations. *Martinez–Garcia,* 397 F.3d at 1211.

The defendant in this case enjoyed a right to privacy in his apartment and was protected from unwarranted governmental intrusion. *See, e.g., United States v. Barajas–Avalos,* 377 F.3d 1040, 1055 (9th Cir. 2004). Although the government had the authority to search the defendant's home pursuant to a search warrant, it was still required to comply with the notice requirement of the Fourth Amendment. The defendant asserts that the notice requirement was not satisfied because the officers failed to serve the search warrant on him even after they determined that there were no issues regarding officer safety or destruction of the evidence. (Mot. to Suppress at 16.)

■■ It is undisputed that the defendant was not served with the search warrant. The government has argued, however, that the defendant's rights were secured by the Notice of Service. The defendant contends that the Notice of Service did not satisfy the Fourth Amendment's notice requirement, because, among other reasons, it failed to indicate the address of the premises to be searched or the items to be seized.

As noted previously, the government concedes that the Notice of Service is not a warrant. The Fourth Amendment expressly requires a warrant to "particularly describ[e] the place to be searched." In addition, a warrant should (1) "enable the person conducting the search reasonably to identify the things authorized to be seized," *McGrew,* 122 F.3d at 849; and (2) "[assure] the individual whose property [was] searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." [4] *Groh,* 540 U.S. at 561, 124 S.Ct. 1284. Because the Notice of Service did not indicate the premises to be searched or the items to be seized, the Court finds that it failed to satisfy the Fourth Amendment's notice requirement. It bears none of the attributes of a warrant. It is not a warrant.

■ The Court must determine if the government's failure to serve a sufficient search warrant on the defendant was reasonable under the circumstances. The circumstances in this case do not suggest any concerns that counterbalance the defendant's right to have adequate notice of the search. There was nothing making it "impracticable or imprudent" for the officers to present the warrant at the beginning of the search once the defendant and the premises had been secured. *See Groh,* 540 U.S. at 562 n. 5, 124 S.Ct. 1284. *A fortiori,* there was nothing making it "impracticable or imprudent" to present the warrant during or immediately following the search. Although "[t]he Constitution does not require police officers to expose themselves to unnecessary and considerable personal risk and potential loss of evidence when carrying out a court-ordered search," *United States v. Peterson,* 353 F.3d 1045,

---

4. For the same reasons, the receipt of items seized, which was presented to the defendant at some time after the search was executed, did not satisfy the Fourth Amendment's requirements.

1049 (9th Cir.2003), such concerns were not present in the case at hand. More than a dozen law enforcement personnel assisted in executing the search of the defendant's residence, a small, one-bedroom apartment. (Mot. to Suppress, Ex. 8, "Arrest/Evidence Report" at 022.) Upon entering the apartment, the officers found the defendant lying in a prone position in the living room. (*Id.* at 023.) The defendant fully complied with the officers' orders and was taken into custody without incident. The officers quickly determined that the defendant was the only person inside the apartment. Therefore, within minutes of entering the apartment, the officers discovered that there were no immediate issues regarding officer safety or destruction of evidence. After securing the apartment, and without serving the search warrant on the defendant, the officers began to search for evidence.

In summary, this was a typical, uneventful search of a small dwelling that presented no circumstances that would reasonably justify the failure to serve the search warrant at the commencement of the search. While it may be reasonable under certain circumstances to delay the service of a search warrant until sometime during or immediately after a search, such circumstances were not present here. Having noted this, there is no evidence that the search warrant was *ever* served in this case until provided to the defense as part of the government's discovery obligations following the defendant's indictment. There are no considerations present that justify this failure. It is not a case, for example, where law enforcement's need to surreptitiously gather evidence justifies the failure to serve a search warrant. Rather, this is a case where the totality of the circumstances demonstrate that the officers could have served the search warrant on the defendant without jeopardizing any other interest. Accordingly, the Court finds that the officers' failure to serve the search warrant was unreasonable and violated the Fourth Amendment.

### C. *Consequences of an Unlawful Search*

 Evidence that is gathered in an unlawful search cannot be used against the victim of the search. *See, e.g., Wong Sun v. United States,* 371 U.S. 471, 484, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Martinez–Garcia,* 397 F.3d at 1210. Therefore, the Court finds that the evidence obtained at the June 2, 2004 search of the defendant's apartment should have been suppressed.

### III. Conclusion

For the foregoing reasons, the Court grants the defendant's motion to suppress all evidence gathered as a result of the June 2, 2004 search.

IT IS SO ORDERED.